of substantial proportions, preferring to have the fund in his safe. That he did so is, of course, possible, but the fact is so extremely improbable as to be out of all harmony with the situation; and the care with which he endeavored to guard against an attack for fraud is a guide to the inference that fraud was at work. Bridger v. Goldsmith, 143 N. Y. 424, 428, 38 N. E. 458. It follows from these views that there should be judgment for the plaintiffs declaring the assignment void, and for an accounting by the assignee and by the defendant Max Baer to a receiver to be appointed, with costs against defendants Adolph Baer and Max Baer, and that the complaint should be dismissed, without costs, as to the defendant Levy.

(50 App. Div. 512.)

### SCANDELL v. COLUMBIA CONST. CO.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

1. MASTER AND SERVANT—UNSUITABLE APPLIANCES—NEGLIGENCE.

The obligation of a master to exercise reasonable care to furnish and keep in repair safe and suitable instruments, tools, implements, appliances, and machinery for the performance of the work for which such articles are designed cannot be delegated to co-employés, so as to shield the master from responsibility for failure therein.

2. SAME—APPLIANCES—FAILURE TO INSPECT—EVIDENCE—DISMISSAL.

The boom of a derrick, by reason of the fall of which plaintiff (defendant's servant) was injured, was fastened by chains connected with clevises joined to an iron plate resting on the top of the spar. The plate was held to the spar by a pin, and an iron strap fastened to the spar opposite the boom came over an iron band around the top of the spar, and hooked over the pin. After the injury the iron band was found raised above the pin. The pin leaned towards the end of the boom, and there was an indentation adjacent to the hole in which the pin was inserted. Evidence tended to show enlargement of the hole in the plate, permitting the pin to wabble, and that the pin should have been immovable. Defendant employed no one to examine and repair such appliances, and they had been used over two years without inspection. *Held* sufficient to support a finding that the boom fell because of its negligent construction and maintenance, and hence it was error to dismiss plaintiff's case at the close of the evidence.

3. SAME—PROXIMATE CAUSE.

Where the evidence was sufficient to support a finding that the negligence alleged was a proximate cause of an injury to a servant, without which the injury could not have occurred, it was error not to submit the case to the jury, though another defect was also a proximate cause of such injury.

4. SAME—WITNESSES—EXPERTS.

Where a witness testified that he had built derricks, and knew how they were all ordinarily constructed and operated, it was error to exclude his testimony on the question of whether or not the appliances on a derrick which fell and caused plaintiff's injuries were proper, because he had never owned a derrick precisely like it.

5. SAME.

Testimony of experts is admissible to show defective construction and maintenance of derrick appliances, in an action to recover for injuries alleged to have been caused thereby.

Appeal from trial term, Rockland county.

Action by Isaac F. Scandell, by Edward B. Scandell, his guardian ad litem, against the Columbia Construction Company. From a judgment dismissing plaintiff's case at the close of the evidence, he appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

William McCauley, Jr., for appellant.

H. S. Bandler (Clarence Lexow and George M. Mackellar, on the brief), for respondent.

HATCH, J. This action was brought to recover damages for an injury claimed to have been sustained by the plaintiff on account of the negligence of the defendant. It appeared upon the trial that the defendant was engaged in unloading a vessel laden with asphalt, lying at the wharf at Jones' Point. The asphalt was lifted out of the hold of the vessel by means of a derrick which was operated by steam power. The plaintiff was the driver of a horse which was attached to a cart. The method of conducting the operation was to back the cart to a point near the vessel, and the asphalt was lifted in a bucket which was attached to the end of a boom, swung around to the cart, and its contents dumped therein and hauled away. At the time of the accident which resulted in the injuries complained of, the plaintiff stood upon the thills of the cart, in front of the box, and was reaching out to catch the bucket as it swung around, when the boom gave way and fell, striking the plaintiff and inflicting quite serious injury. There was no question of contributory negligence in the case, nor any question of the negligence of a co-employé. The only point litigated upon the trial was the negligence of the defendant, and the ruling of the court in dismissing the complaint proceeded upon the ground that its negligence was not established. The claim on the part of the plaintiff was that the defendant had failed in its obligation to provide a safe and suitable derrick for the purpose for which the same was used. It is well settled that the obligation of the master requires the exercise of reasonable care to furnish safe and suitable instruments, tools, implements, appliances, and machinery for the performance of the work for which such articles are designed. Benzing v. Steinway, 101 N. Y. 547, 5 N. E. 449. Such obligation is a continuing obligation, and imposes a duty as absolute to keep the machinery and articles in repair as is the original obligation to furnish safe and suitable machinery, implements, and appliances. Fuchs v. Manufacturing Co. (Sup.) 12 N. Y. Supp. 870. This is a primary obligation, which cannot be delegated by the master so as to shield from responsibility. Tomaselli v. Corporation, 9 App. Div. 127, 41 N. Y. Supp. 51.

It is the claim of the plaintiff that the fastening of the boom to the upright or top of the spar of the derrick was, when furnished, unsafe and unsuitable for the purposes for which it was used, and that, in addition thereto, care and caution were not exercised to see that the same were kept in proper order and repair during the period of its use, in consequence of which the same became unsafe and infirm, and finally resulted in their giving way, and permitting the boom to fall. It appears from the record that a model of the derrick was used upon the trial, which fully exhibited the method in which the derrick was worked, and the causes which produced the fall. This model does not accompany the record upon this appeal, in conse-

quence of which we are left to a verbal description of the derrick and its claimed defects. Very much of the testimony which was given by the plaintiff was explanatory of the derrick in connection with the model, and for this reason the detailed description is in some respects obscure and uncertain. It appears, however, that the boom was fastened to the top of the spar by two clevises connected with two chains fastened to the boom; the clevises being fastened to an iron plate resting upon the spar. The plate was held in position by means of an iron pin which was driven through a hole in the iron plate, and into the spar a distance of nine or ten inches. The pin was an inch and a half in diameter and the hole in the plate an inch and three-quarters. A strap of iron about half an inch in thickness and three inches wide was fastened to the spar on the side opposite the boom, came up over the iron band around the top of the spar, and hooked over the pin which held the iron plate in position. This contrivance supported the weight of the boom and the loaded bucket attached thereto. After the accident the iron band which went over the pin was found to be raised above the pin. The pin leaned a little towards the end of the boom, and there was a slight indentation on the side of the hole into which the pin was inserted. Evidently the iron strap which held the clevises about the pin had been forced up, permitting them to go over the top of the pin, and thus the boom fell. There was also found, at what is called the "throat of the boom," which we assume was the point where it joined onto the spar, a broken eyebolt. Nothing else was found broken. The testimony on the part of the plaintiff tended to establish that the pin should have been keyed in position so as not to permit of its moving. Further, evidence was given tending to show that the hole had become enlarged, permitting the pin to wabble therein, and also that it was deeper than the length of the pin, and had permitted the same to fall further into the spar.

It is not at all necessary that we should set out in detail all of the evidence in this case. A careful reading of the record leads us to the conclusion that the proof was sufficient, from which the jury would have been authorized to find that the occasion of the fall of the boom was the result of a failure either originally to furnish a safe, suitable, and proper appliance, or a failure to properly inspect the same from time to time, and keep it safe and in proper repair. It is undoubtedly true that the mere fact of the happening of an accident is not sufficient upon which to predicate the negligence of the defendant. Neither is this a case where the rule of "Res ipsa loquitur" applies. The fact of negligence must be established, either by the facts themselves, or the legitimate inferences to be derived therefrom. The rule in this respect is clearly stated in Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537; which is relied upon by the defendant to support the ruling of the court below. In that case, however, there was nothing which tended to show that the traveler or the appliance which broke was at all out of repair or defective in any wise, or but that it performed its office as it was expected to perform it. It was constructed as such appliances are usually constructed, and an accident of a similar character had never before happened. There was nothing in the case, therefore,

except the bare happening of the accident, upon which negligence could be predicated. In the present case, as we have seen, the appliances at the top of the spar after the accident were found to be displaced, and further testimony was given that they were not properly secured for the purpose of bearing the strain which they were expected to bear. Upon this subject, of course, there was conflicting proof; but upon all the testimony the jury would have been authorized to find that the appliances were defective, either on account of their original construction, or by permitting them to become out of repair. They had been in use for over two years, and no provision whatever was made by the defendant for their inspection from time to time, and no person seems to have been charged with the obligation of their examination and repair. The top of the spar had been at one time repaired, and wedges had been inserted in the hole; authorizing the inference that the hole in the spar had become too large for the pin. The jury were entitled to consider all of these facts, as well as others to which we do not advert, and from them we think they might have reached the conclusion that the cause of the fall was the defective character of the appliances at the top of the spar, and therefrom to determine that the defendant had not discharged its obligation, or exercised reasonable care so to do, in keeping such appliances suitable and safe.

It is said, however, that it is quite as probable that the fall of the boom was occasioned by the breaking of the eyebolt at the throat of the boom, and that, as there was no claim made in the testimony that the eyebolt was in any respect either an improper appliance or out of repair, therefore this was the cause of the accident, and that a case was not made for submission to the jury. It was said by Judge Earl in Ring v. City of Cohoes, 77 N. Y. 83:

"When several proximate causes contribute to an accident, and each is an efficient cause, without the operation of which the accident would not have happened, it may be attributed to all or any of the causes; but it cannot be attributed to a cause, unless without its operation the accident would not have happened."

And such is the rule of the authorities. Durkin v. Sharp, 88 N. Y. 225; Grant v. Railroad Co., 133 N. Y. 657, 31 N. E. 220. The facts of this case are brought squarely within the decisions above cited, and sustain the rule that upon all of the evidence the jury would have been authorized to find that the occasion of the accident was the defective appliances at the top of the spar, as the sole contributing cause, or without which the accident would not have happened. If it appeared that there was no defect in the broken eyebolt, and it was proper for the purpose for which it was furnished and used, the defendant would undoubtedly be entitled to a charge that, if the accident happened from such cause, no recovery could be had. But the court could not assume to determine such proposition as matter of law, or refuse to submit to the jury, as a question for them to determine, whether the accident was the result of defective appliances at the top of the spar. This case, therefore, presented a question for the jury, and it was error to dismiss the complaint.

Error was also committed in rulings upon the trial excluding competent testimony in several instances. It is not necessary that we should call attention to all, but only to one, as they were practically of the same class. It is sufficient to say that the rulings had upon the trial were in most cases quite favorable to the defendant, and in some respects more favorable than that to which it was entitled. As such questions may not arise upon another trial, we do not feel called upon to discuss more than one ruling. The witness Jones qualified as an expert in the construction and operation of derricks more or less similar to the one in question. He testified that he knew how they were all ordinarily constructed and operated. It appeared that he had never owned a derrick precisely like the one in question, and for this reason the court excluded his evidence as incompetent upon the question of whether the appliances used upon this derrick were proper or not. Such ruling was error. The witness had been qualified as an expert upon the subject-matter under investigation, and it was not necessary that he should have either owned or constructed a derrick precisely like this one. He had built derricks, knew the principle upon which they worked, and presumably the weight which they had to carry. He was therefore competent to give an opinion as to the perfect or imperfect character of this derrick, and expert testimony was admissible upon the subject. Greenl. Ev. § 440, notes, and cases cited. No such rule of limitation as that enforced by the court has ever, so far as we are aware, been applied in the case of a person who is qualified to testify as an expert upon the subject under investigation. It follows that the judgment should be reversed.

Judgment reversed, and a new trial granted; costs to abide the event. All concur.