# JEFFREY MANUFACTURING COMPANY *v.* BLAGG.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 511.    Argued December 1, 1914.—Decided January 5, 1915.

The negligence of a fellow servant is more likely to be a cause of injury in larger establishments than in smaller ones and assumption of risk is different in the former than in the latter. Classifications based on number of employés in a state statute abolishing the fellow servant and assumption of risk defenses under specified conditions are not so arbitrary as to amount to a denial of equal protection of the laws.

This court only hears objections to the constitutionality of a statute from those who are themselves affected by its alleged unconstitutionality in the feature complained of. Where the employer raises the question of denial of equal protection of the laws, arguments based on alleged discriminations against employés cannot be decisive.

The Fourteenth Amendment only takes from the State the right and power to classify subjects of legislation when the attempted classification is so arbitrary and unreasonable that the court can declare it beyond legislative authority. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61.

In a general Workmen's Compensation Act, establishing a state plan that all employers having five or more employés may enter on equal terms, a provision, abolishing the defense of contributory negligence as to such employers who do not come into the plan, is not unconstitutional as denying equal protection of the laws as to them because the defense is not abolished as to those having less than five employés; the classification is not arbitrary and unreasonable, and so *held* as to such provision in the Workmen's Compensation Law of Ohio.

THE facts, which involve the constitutionality under the due process and equal protection clauses of the Fourteenth

Amendment of certain provisions of the Workmen's Compensation Act of Ohio, are stated in the opinion.

Mr. H. B. Arnold, with whom Mr. W. Wilson Carlile was on the brief, for plaintiff in error.

Mr. Fred C. Rector and Mr. James I. Boulger, with whom Mr. Timothy S. Hogan, Attorney General of the State of Ohio, and Mr. F. M. McSweeney were on the brief, for defendant in error.

Mr. Justice Day delivered the opinion of the court.

This action was brought in the Court of Common Pleas of Franklin County, Ohio, to recover for injuries received by Harry O. Blagg, while in the service of The Jeffrey Manufacturing Company, a corporation engaged in manufacturing at Columbus, Ohio. The allegation was that the injury happened to the plaintiff because of the standing of certain freight cars upon a switch, with an opening left between them for the use of employés; that the plaintiff was directed by the defendant to assist in removing certain lumber from a point on the north side of the switch, and, in so doing, it was necessary for the plaintiff to pass, as directed and instructed by the defendant, through the opening between the fourth and fifth cars on the switch; that whilst he was so doing, defendant caused to run against the car standing on the east end of the switch a long cut of cars pushed by an engine, with the result that the cars on the switch were jammed and pushed together, and the plaintiff was caught and seriously injured. The negligence charged was (1) in causing said cut of cars to be pushed upon and against the car standing upon said switch while plaintiff was between said cars, (2) in failing to warn or notify the plaintiff of the intention of the defendant to push said cars into or upon said switch or

against the car on the east end thereof, and (3) in having an insufficient number of men or employés engaged in the handling and switching of said cut of cars. A recovery was had in the Court of Common Pleas, and the judgment was affirmed in the Court of Appeals, and in the Supreme Court of the State, and the case was brought here by writ of error.

The constitutionality of the Act of the General Assembly of the State of Ohio known as the Workmen's Compensation Law is brought in question because of the fact that manufacturing companies, employing five or more, who do not take advantage of its provisions, and the plaintiff in error did not, are deprived in negligence cases of certain defenses otherwise available: (1) negligence of fellow-servants, (2) defense of assumed risk, and (3) defense of contributory negligence.

The constitutionality of the act was sustained against many objections after full consideration by the Supreme Court of Ohio in *State ex rel. Yaple* v. *Creamer*, 85 Oh. St. 349. The validity of the act in a single feature is here brought in question. To decide it renders necessary some examination of its provisions, as outlined in §§ 1465, *et seq.*, of Vol. 1, Page & Adams' annotated General Code of Ohio. The act is intended to create a state insurance fund for the benefit of injured, and the dependents of killed, employés. The general scheme of the law is to provide compensation by means of procedure before a board, for injuries not wilfully self-inflicted, received by employés in the course of their employment. The employer who complies with the law is relieved from liability for injury or death of an employé who has complied with the terms of the act, except the injury arise from the wilful act of the employer, his officer or agent, or from failure to comply with laws enacted for protection of the employé, in which event the injured may sue for damages or recover under the act. It is one of the laws which has

become more or less common in the States, and aims to
substitute a method of compensation by means of inves-
tigation and hearing before a board, for what was re-
garded as an unfair and inadequate system, based upon
statutes or the common law. The purpose of the act, as
appears from its title, is to provide a fund out of which
reparation in such cases shall be made. For that purpose
the employments are classified by the State Liability
Board of Awards, with reference to their degree of hazard
and risk, and rates of premiums fixed, based upon the
total payroll and number of employés in each of the classes
of employments, the purpose being to establish a fund
adequate to provide for the compensation required in the
act, and to create a surplus sufficiently large to guarantee
a state insurance fund from year to year. (Section 1465-
53, General Code.) Every employer who employs five
workmen or more regularly in the same business or in
the same establishment, who pays into the fund in ac-
cordance with the requirements of the act, is not liable to
respond in damages at common law or by statute, save
as in the act provided, for injuries or deaths of any such
employés, provided the employés remain in the service
with notice that the employer has paid into the state
insurance fund the premiums required by the act. (Sec-
tion 1465-57 General Code.) Section 1465-60 provides
that "all employers who employ five or more workmen
or operatives regularly in the same business, or in or
about the same establishment who shall not pay into
the state insurance fund the premiums provided by this
act, shall be liable to their employés for damages suf-
fered by reason of personal injuries sustained in the
course of employment caused by the wrongful act, neg-
lect or default of the employer, or any of the employ-
er's officers, agents or employés, and also to the personal
representatives of such employés where death results
from such injuries and in such action the defendant

shall not avail himself or itself of the following common law defenses: The defense of the fellow-servant rule, the defense of the assumption of risk, or the defense of contributory negligence." There are provisions of the act concerning other features not necessary now to consider.

As the plaintiff in error, employing a large number of men, did not pay into the state insurance fund the premiums provided by the law, it was held not entitled to the defenses of the fellow-servant rule, the assumption of risk, or of contributory negligence. "The sole question presented," says the counsel for the plaintiff in error, "is whether the Ohio Workmen's Compensation Act contravenes the provisions of Section 1 of the Fourteenth Amendment to the Constitution of the United States in that the classification of employers and employés created by the act is arbitrary and unreasonable." This is said to result from the fact that in denying the defenses industries arè classified by the number of employés,— those employing four or less are still privileged to make either or all of these defenses, while if the employer has five or more employés, and has not paid into the state insurance fund the premiums provided by the act, he is deprived of the benefit of such defenses. In other words, the legislature has selected for the application of this act only establishments employing five or more, and which comply with the terms of the act by paying the assessments required, and the law does not apply to establishments having less than five employés.

The fact that the negligence of a fellow servant is more likely to be a cause of injury in the large establishments, employing many in their service, and that assumed risk may be different in such establishments than in smaller ones, is conceded in argument, and, is, we think, so obvious, that the state legislature cannot be deemed guilty of arbitrary classification in making one rule for large

and another for small establishments as to these defenses.

The stress of the present argument, in the brief and at the bar, is upon the feature of the law which takes away the defense of contributory negligence from establishments employing five or more and still permits it to those concerns which employ less than five. Much of the argument is based upon the supposed wrongs to the employé, and the alleged injustice and arbitrary character of the legislation here involved as it concerns him alone, contrasting an employé in a shop with five employés with those having less. No employé is complaining of this act in this case. The argument based upon such discrimination, so far as it affects employés by themselves considered, cannot be decisive; for it is the well-settled rule of this court that it only hears objections to the constitutionality of laws from those who are themselves affected by its alleged unconstitutionality in the feature complained of. *Southern Railway* v. *King*, 217 U. S. 524, 534; *Engel* v. *O'Malley*, 219 U. S. 128, 135; *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540, 550; *Yazoo & Mississippi Valley R. R.* v. *Jackson Vinegar Co.*, 226 U. S. 217, 219; *Rosenthal* v. *New York*, 226 U. S. 260, 271; *Darnell* v. *Indiana*, 226 U. S. 390, 398; *Plymouth Coal Co.* v. *Pennsylvania*, 232 U. S. 531, 544; *Missouri, Kansas & Texas Ry.* v. *Cade*, 233 U. S. 642, 648.

The question now is: Are employers who fail to come into the plan of the statute by complying with its requirements, who employ five·men or more, arbitrarily discriminated against, because of the provisions of the act which deprive them of the benefit of the defense of contributory negligence of the employé, while the smaller employers, employing four or less, may still find such defense available?

This court.has many times affirmed the general proposition that it is not the purpose of the Fourteenth Amend-

ment in the equal protection clause to take from the States the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the court can declare it beyond the legislative authority. *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78, and previous cases in this court cited on page 79. That a law may work hardship and inequality is not enough. Many valid laws from the generality of their application necessarily do that, and the legislature must be allowed a wide field of choice in determining the subject-matter of its laws, what shall come within them, and what shall be excluded. Classifications of industries with reference to police regulations, based upon the number of employés, have been sustained in this court. *St. Louis Consolidated Coal Co.* v. *Illinois,* 185 U. S. 203. In that case, an inspection law of the State was sustained, which was applicable only to mines employing five men or more at any one time. This case was cited with approval, and its doctrine applied, in *McLean* v. *Arkansas,* 211 U. S. 539, where a law regulating the payment of wages in coal mines in Arkansas was sustained though made applicable only where not less than ten miners were employed.

Certainly in the present case there has been no attempt at unjust and discriminatory regulations. The legislature was formulating a plan which should provide more adequate compensation to the beneficiaries of those killed and to the injured in such establishments, by regulating concerns having five or more employés. It included, as we have said, all of that class of institutions in the State.

No employer is obliged to go into this plan. He may stay out of it altogether if he will. Not opening the door of the statute to those employing less than five, still leaving them to the obligations and rules of the common and existing statute law, the legislature may have believed

that, having regard to local conditions, of which they must
be presumed to have better knowledge than we can have,
such regulation covered practically the whole field which
needed it and embraced all the establishments of the State
of any size, and that those so small as to employ only four
or less might be regarded as a negligible quantity and need
not be assessed to make up the guaranty fund or covered
by the methods of compensation which are provided by
this legislation. This is not a statute which simply de-
clares that the defense of contributory negligence shall be
available to employers having less than five workmen, and
unavailable to employers with five and more in their
service. This provision is part of a general plan to raise
funds to pay death and injury losses by assessing those
establishments which employ five and more persons and
which voluntarily take advantage of the law. Those re-
maining out and who might come in because of the number
employed are deprived of certain defenses which the law
might abolish as to all if it was seen fit to do so. If a line
is to be drawn in making such laws by the number em-
ployed, it may be that those very near the dividing line
will be acting under practically the same conditions as
those on the other side of it, but if the State has the right
to pass police regulations based upon such differences,—
and this court has held that it has,—we must look to gen-
eral results and practical divisions between those so large
as to need regulation and those so small as not to re-
quire it in the legislative judgment. It is that judgment
which, fairly and reasonably exercised, makes the law; not
ours.

We are not prepared to say that this act of the legis-
lature, in bringing within its terms all establishments
having five or more employés, including the deprivation
of the defense of contributory negligence where such es-
tablishments neglect to take the benefit of the law, and
leaving the employers of less than five out of the act was

classification of that arbitrary and unreasonable nature which justifies a court in declaring this legislation unconstitutional.

It follows that the judgment of the Supreme Court of the State of Ohio is

*Affirmed.*