HERKEY v. AGAR MFG. CO., Inc.

(Supreme Court, Special Term, Kings County.    May 22, 1915.)

1. STATES ⊜4—STATUS UNDER FEDERAL CONSTITUTION.
  The federal Constitution is paramount both over state statutes and the state Constitution.
  [Ed. Note.—For other cases, see States, Cent. Dig. § 2;   Dec. Dig. ⊜4.]

2. CONSTITUTIONAL LAW ⊜42—VALIDITY OF STATUTE—RIGHT TO QUESTION.
  Only those whose rights are directly affected can properly question the constitutionality of a statute, and where the party whose rights were affected did not question it the matter cannot be decided.
  [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40;  Dec. Dig. ⊜42.]

3. NEGLIGENCE ⊜1—WHAT CONSTITUTES.
  Negligence is the failure to act in a given society according to common standards.
  [Ed. Note.—For other cases, see Negligence, Cent. Dig. § 1;   Dec. Dig. ⊜1.
  For other definitions, see Words and Phrases, First and Second Series, Negligence.]

4. MASTER AND SERVANT ⊜250¾, New, vol. 16 Key-No. Series—INFANT SERVANT—WORKMEN'S COMPENSATION ACT.
  The Legislature may remove the disability of infancy, and allow an infant servant to elect whether to proceed at common law or under the Workmen's Compensation Act (Consol. Laws, c. 67).

5. MASTER AND SERVANT ⊜250¾, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—VALIDITY OF STATUTE—RIGHT TO DETERMINE.
  The trial court should not hold the Workmen's Compensation Law inoperative as to employés electing to proceed under the common law, for its decision might be followed by injured servants, and then overturned by the court of last resort.

Action by Anna Herkey, an infant, etc., against the Agar Manufacturing Company.  Demurrer to answer overruled.

Robert Stewart, of Brooklyn, for plaintiff.
Amos H. Stephens, of New York City, for defendant.

CRANE, J.  The demurrer in this case raises the question whether an employé may bring an action to recover damages for injuries or is completely barred by the Workmen's Compensation Act (chapter 816 of the Laws of 1913, re-enacted and amended by chapter 41 of the Laws of 1914).  This action is brought to recover damages for personal injury received by the plaintiff in December of 1914, while working for the defendant in its factory.  Liability is claimed under the common law.  The answer has pleaded as a separate and complete defense that the defendant has complied with the provisions of the Workmen's Compensation Act and is relieved from all liability, except as therein stated.  To this defense the plaintiff has demurred.  Her claim is that the Workmen's Compensation Act cannot deprive her of the right to resort to the courts for damage if she so desires.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1, 2] At the outset it is well to state that the act is legal as to all who act under it. Very few will be foolish enough, even if allowed, to bring a lawsuit for damages, and run the risk and uncertainties of recovery, when the allowances made by the statute may always be accepted. It was decided in the case of Ives v. South Buffalo Ry., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156, that the Workmen's Compensation Law passed in 1910, which compelled the employer when not at fault to pay his servant a fixed compensation for an injury received, violated both state and federal Constitutions, as taking property without due process of law, and was not within the police power of the state. The case of State ex rel. Davis-Smith Co. v. Clausen, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. [N. S.] 466, subsequently decided, differed with our Court of Appeals and held just the other way. The subsequent amendment to our Constitution (article 1, § 19) cannot, therefore, authorize the state Legislature to pass a compensation law compulsory as to the employer, because the state Constitution can no more violate the federal Constitution than can an act of the Legislature, and for this purpose both are upon an equality. The present law may, however, be considered as optional with the employer.

By section 11 an "alternative remedy" is provided in case the employer does not comply with the act. He may be sued by the employé in an action for damages, and the defenses of contributory negligence, negligence of a fellow servant, and assumption of risk are taken away. That part which provides that if the employer does not insure the servant may sue him in the courts, not only for damages, but may elect to claim the compensation provided by the act, must be held to apply to such claims only as can be maintained at common law or under other statutes. While section 50 provides that, if an employer fail to secure compensation to his employé as fixed, he shall be liable to a penalty for every day during which such failure continues of $1 for every employé, to be recovered in an action brought by the commission, this feature can be eliminated under section 118 without invalidating the act. But I cannot decide these points, as the employer does not raise them, and it has been frequently held that only those whose rights are directly affected can properly question the constitutionality of a state statute. Hendrick v. State of Maryland, 235 U. S. 610, 35 Sup. Ct. 140, 59 L. Ed. ——.

If, under the Ives Case, the Workmen's Compensation Act cannot be compulsory as to the employer, can it be compulsory as to the employé? If a compulsory act takes the property of an employer in violation of the fourteenth amendment, does a compulsory act also deprive the employé of property or liberty without due process of law? In this connection it will be noted that many of the states have now adopted Workmen's Compensation Acts, and that nearly all of them, unlike the New York statute, are elective both as to the employer and employé; that is, the employer and the employé have the right to choose whether they will come under the act, and it is made applicable to them only by their agreement, express or implied. In none of these states has fixed compensation been forced upon the

employer or employé, and yet both have recognized the material benefit to be derived from such an act and have almost universally agreed to be governed by it.    See Bradbury's Workmen's Compensation, vol. 1, c. 1.    By the New Jersey act the employment is presumed to be under the Workmen's Compensation Law unless the master or the servant give notice the one to the other that he elects to be governed by the common law.    Sexton v. Newark District Telegraph Co., 84 N. J. Law, 85, 86 Atl. 451; Troth v. Millville Bottle Works (N. J. Sup.) 91 Atl. 1031.    For the Massachusetts statute and the rulings under it, see Young v. Duncan, 218 Mass. 346, 106 N. E. 1; Opinion of Justices, 209 Mass. 607, 96 N. E. 308.    For the Wisconsin statute, Borgnis v. Falk Co., 147 Wis. 327, 133 N. W. 209, 37 L. R. A. (N. S.) 489.    As to the Ohio statute, see State ex rel. Yaple v. Creamer, 85 Ohio St. 349, 97 N. E. 602, 39 L. R. A. (N. S.) 694; Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 35 Sup. Ct. 167, 59 L. Ed. ——.

[3, 4] In these cases which have just been cited it was specially noted that they did not violate the principles of the Ives Case, in that an election was given to both the employer and employé, and that their action thereunder was voluntary.    So we come to the question whether an employé may be compelled to accept a certain sum of money by a legislative fiat for an injury done to him through negligence. Can the Legislature take away altogether the right to recover damages which a person sustains by reason of the failure of another individual to exercise reasonable care?    Can the state deprive its citizens of all remedy for negligence?    Negligence is the failure to act in a given society according to common standards, and liability for negligence is the governmental force used to keep society together, thus requiring persons to respect the safety of all other persons.    A man has a right under well-organized government to be protected from the carelessness and negligence of others.    A failure to exercise the ordinary care used in a given society, resulting in an injury, is a violation of the inherent rights of the injured member of that society. It will be conceded upon the mere statement that the Legislature cannot take away all remedy for injurious trespass upon property; that is, a law which should provide that no action could be maintained in the courts of the state for an injury done to real property would violate the fourteenth amendment.    Would not a law likewise be unconstitutional which should provide that no cause of action could be maintained thereafter to recover the damages inflicted by an assault, or by a libel destroying reputation, or through malicious prosecution or by false arrest?    All these matters pertain to a man's security of person and enjoyment of his liberty, and for the Legislature to take away all remedy for such wrongs is the same as legislating that such wrongs may be committed.

"We are unable to perceive the difference in principle between an act seeking to divest them [rights] directly and one providing that, where they have been divested by unlawful violence, no remedy shall be had against the wrongdoer." Johnson v. Jones et al., 44 Ill. 142, at page 163 (92 Am. Dec. 159).

To permit others to libel, assault, or falsely arrest an individual without providing a remedy for such acts is to deprive a man of his

life and of his liberty as those words have been construed. Likewise it deprives a man of his life and of his liberty within the meaning of the Constitution to permit others to negligently injure him and provide no remedy. Cooley on Constitutional Limitations (5th Ed.) p. 445, says that under the fourteenth amendment every man is entitled to a certain remedy in the law for all wrongs against his person. Mac-Mullen v. City of Middletown, 112 App. Div. 81, 98 N. Y. Supp. 145, held that a man had a vested right to be secured from wrongful injury to his person, and that the Legislature could not deprive him of all remedy for the wrong. This case was reversed in 187 N. Y. 37, 79 N. E. 863, 11 L. R. A. (N. S.) 391, in so far as the rule was applied to municipal corporations, as they were part of the machinery of government, and the Legislature in granting to them charters could restrict or take away liability for negligence. There was, however, no repudiation of the rule as applied to other parties. See, also, the opinion in Williams v. Village of Port Chester, 72 App. Div. 505, 76 N. Y. Supp. 631, where this right to a remedy for a wrong resulting from negligence is fully and completely stated. S. c., 97 App. Div. 84, 89 N. Y. Supp. 671, affirmed 183 N. Y. 550, 76 N. E. 1116; Barry v. Village of Port Jervis, 64 App. Div. 268, 72 N. Y. Supp. 104; Bertholf v. O'Reilly, 74 N. Y. 509, 30 Am. Rep. 323; Levy v. Dunn, 160 N. Y. 504, 55 N. E. 288, 73 Am. St. Rep. 699. In Post Publishing Company v. Butler, 137 Fed. 723, 71 C. C. A. 309, a statute which limited the damages to be recovered in libel actions where a retraction had been made was held to be in violation of the state Constitution, but the provisions of the state Constitution were similar in effect to the provisions of the fourteenth amendment of the federal Constitution. See, also, Osborn v. Leach, 135 N. C. 628, 47 S. E. 811, 66 L. R. A. 648. Here it was said:

"There is no room for holding in a constitutional system that private reputation is any more subject to be removed by statute from full legal protection than life, liberty or property. It is one of those rights necessary to human society that underlie the whole social scheme of civilization."

The same words are as applicable to protection from another's gross negligence or assault. The case of Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, quoted in Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, says:

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will," or even at the whim, "of the Legislature, unless prevented by constitutional limitations."

This certainly does not mean that any and every rule of the common law can be changed at the whim of the Legislature, for it distinctly says that rights of property which have been created by the common law cannot be taken away without due process. But rights to life and liberty are equally protected by the Constitution, and these rights are but a rule of the common law, or have found their expression in the common law as fundamental principles of government. The right to keep

one's person free from unlawful assault or arrest is as sacred as the right to keep one's property from an unlawful taking. These words of Chief Justice Waite were used in explaining the force and effect of the police power, which, of course, justified in one sense the taking of property without judicial action. That the Justice had such limitation in mind in the use of his words is also evident from the fact that he said that the law itself as a rule of conduct could be changed at the will of the Legislature "unless prevented by constitutional limitations." It is the constitutional limitation of the fourteenth amendment which is here insisted upon, and which prevents the Legislature from taking away all cause of action for the above enumerated wrongs to the person. The Legislature may change the remedy, shift the burden of proof, raise presumptions, and modify rules of evidence, but it cannot take away altogether the cause of action for personal negligence resulting in personal injury.

If the Legislature, therefore, cannot take away the cause of action for assault, for libel, or for negligence, except where it has created such cause of action, can it limit the damages to be recovered therein by a schedule of prices? It is evident that it could not limit the damage to be recovered for injury to real or personal property, as this would be clearly taking property without due process. Likewise it cannot limit a recovery for actual damage sustained through assault, libel, or negligence, for this would be in effect depriving a person of life and liberty. If it can arbitrarily fix the amount, it can fix it so low or so high as to be a deprivation of all protection and of all personal or property rights. This act must be considered in the light of what may be done under the power exercised and not what will be done.

I am strongly of the opinion, for the reasons stated, that the Workmen's Compensation Act cannot be forced upon employés any more than upon employers; that if there cannot be a compulsory act for the master, neither can there be a compulsory act for the servant; that if the employer may elect whether he will come in under the Workmen's Compensation Act, or stand by his common-law liability, so can the employé. It must be by mutual consent, or the law is of no force.

As I have above stated, all the Workmen's Compensation Acts of the various states, with one or two exceptions, are based upon this voluntary action upon the part of both the employer and the employé. These enactments or laws provide a rule of presumption; that is, the act of hiring is presumed to be under the compensation act unless a notice provided by the law is given to the contrary. This is very simple, has worked well, and has obviated all constitutional objections. It is a very easy matter for the New York state Legislature to so modify this law, for under the present enactment (chapter 41 of the Laws of 1914) the employé is given no choice or election. If the employer chooses to come under the Compensation Act the employé is bound to and is barred from all other remedy.

The plaintiff in this case is an infant and a question may arise as to the power of an infant to elect his remedies. Murphy v. Village of Ft. Edwards, 213 N. Y. 403, 107 N. E. 716. The Legislature, however, may remove the disability of infancy so as to permit an infant old

enough to go to work under our labor statutes to make an election as to whether he will work under the compensation law or the common law. Dickens v. Carr, 84 Mo. 658. By the New Jersey act the infant may exercise the option through his guardian. See Sexton Case, supra. In the Borgnis Case, supra, it was said:

"There is no claim that the Legislature may not endow minors with the right to make contracts otherwise lawful."

[5] While I have thus frankly stated my views, I must not overlook the serious consequences which may follow from the Trial Term court interfering with this act of the Legislature. If the plaintiff were the only one interested, I should have no hesitancy in deciding that she might maintain this action; but she is not the only one interested. This act gives to all injured employés, irrespective of contributory negligence or their ability to maintain a common-law action, certain definite sums of money when injured. Notice, however, must be given by the employé within the time prescribed by the act and other formalities complied with. Through a desire for more money or the persuasions of lawyers many injured employés, in reliance upon my decision, might be inclined to forego the compensation given by the statute and resort to an action for negligence. The Court of Appeals might subsequently determine that in this manner I was in error, or that in the light of subsequent decisions (Second Employers' Liability Cases, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. [N. S.] 44), the Ives Case should be modified in its limitations of the police power. In such a case the result would be that all such employés would have lost forever all rights under the Compensation Act and also would be barred from an action for damages. In other words, all their rights might be made to depend upon the correctness of the view of one judge. Such widespread consequences create a situation where the Trial Term should not declare a legislative act inoperative, even though the judge were of such an opinion.

I have examined all of the points which have been raised by the briefs; I have given my opinion of them as above stated, but for reasons that work, in my judgment, for the proper and orderly administration of justice in the courts, I must overrule the demurrer and hold that the plaintiff cannot maintain this action, at least until a court of final authority passes upon the question.